UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                    )
INTEGRITY TRUST, by its trustee, Jon )
Cuddeback,                           )     No. C16-927RSL
                                    )
                Plaintiff,           )
                                    )
        v.                           )     ORDER GRANTING MERS'S
                                    )     MOTION TO DISMISS AND
CAPITAL ONE, N.A., et al.,           )     CAPITAL ONE'S MOTION
                                    )     FOR SUMMARY JUDGMENT
                Defendants.          )
_____)

This matter comes before the Court on a motion to dismiss (Dkt. #15) filed by defendant Mortgage Electronic Registration Systems, Inc. ("MERS") and on a motion for summary judgment (Dkt. # 15) filed by defendant Capital One, N.A. ("Capital One").[1] Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

## BACKGROUND

This is the third lawsuit involving the 2012 foreclosure of the residential property located at 2222 West Lake Sammamish Parkway NE, in Redmond, Washington ("the Property"). Plaintiff is a self-settled trust established by Gary and Diane Alexander (collectively, "the

---

[1] For purposes of this Order, Capital One and MERS will be referred to collectively as Defendants, unless otherwise noted.

ORDER GRANTING MERS'S MOTION
TO DISMISS AND CAPITAL ONE'S MOTION
FOR SUMMARY JUDGMENT

Alexanders") for the benefit of their adult sons. (Dkt. #1), ¶ 2; (Dkt. #1), Ex. A-3. In 2007, the Alexanders borrowed three million dollars from Chevy Chase Bank, F.S.B. ("Chevy Chase") through an Adjustable Rate Note ("Note"). The loan was to be used to finance initial construction of the Alexanders' home. In addition to the Note, the Alexanders signed a notarized Deed of Trust (DOT), authorizing a trustee to sell the Property if the Alexanders defaulted on their obligations under the Note.

In the first quarter of 2009, Capital One merged with Chevy Chase. Several months later, in October 2009, the Alexanders stopped making payments on the Note. For the next thirty-two months, the Alexanders continued to live on the Property without taking any action to cure the default. On July 27, 2012, the Alexanders received notice that the Property would be sold. At the trustee's sale on November 30, 2012, Capital One bought the Property for $2,491,148.85. In spite of the foreclosure and trustee's sale, the Alexanders continued living on the Property without making any rent payments or payments on the Note, which was in default in excess of $561,000 at the time of the trustee's sale.

In order to delay their impending eviction, on November 21, 2012, the Alexanders filed suit *pro se* in Washington superior court against Capital One, MERS, and a number of other defendants. Alexander v. Capital One, et al., ("Alexander I"), No. 12-2-37609-3 (Aug. 21, 2013). The Alexanders also engaged in a number of other delay tactics while Alexander I was pending, such as filing for bankruptcy the day before a summary judgment hearing in order to trigger the automatic stay provision available to parties engaged in bankruptcy proceedings. Alexander v. Capital One, et al, ("Alexander II"), No. 13-2-27723-9, slip op. ¶ 15(a) (June 17, 2014 ). On July 30, 2013 the Alexanders retained an attorney and submitted a second complaint, Alexander II, voluntarily withdrawing the previous action, which was dismissed on August 21, 2013. The Alexander II complaint, filed against current defendants Capital One and MERS, among others, alleged the following causes of action: Wrongful Foreclosure, Fraud, Slander of

ORDER GRANTING MERS'S MOTION
TO DISMISS AND CAPITAL ONE'S MOTION
FOR SUMMARY JUDGMENT                -2-

Title, Negligence, violation of the Consumer Protection Act (CPA), Criminal Profiteering, and Declaratory Judgment.

On summary judgment, the <u>Alexander II</u> court dismissed all claims against Capital One and MERS.  The court also granted the defendants attorneys' fees and costs pursuant to a provision of the DOT and "for the baseless filing of the Complaint in violation of [Washington Civil Rule 11]." No. 13-2-27723-9, slip op. at 7.  The court concluded that "[t]he entirety of [P]laintiffs' lawsuit against defendants was frivolous and advanced without reasonable cause because it could not be supported by any rational argument on the law or facts…." No. 13-2-27723-9, slip op. ¶¶ 26-27.  Attorneys' fees and costs were awarded in the amount of $79,526.63.  <u>Id</u>. ¶ 28.  The trial court's decision was affirmed on appeal.  <u>Alexander v. Capital One</u>, Nos. 71952-1-I, 72350-2-I, 2015 WL 7736383 (Wash. Ct. App. Nov. 30, 2015).

The instant lawsuit closely resembles the previous two, with Integrity Trust now substituted as Plaintiff.  The operative facts are the same, but there are three new causes of action in addition to the claims previously brought in state court.  Plaintiff now brings a claim to effectuate rescission under the Truth in Lending Act (TILA), as well as claims that Defendants violated the Fair Debt Collection Act (FDCA) and the CPA.

In support of its TILA claim, Plaintiff attached a document to its Complaint entitled "Notice of Revocation of Power of Attorney" that was not cited in the earlier actions.  (Dkt. #1, Ex. B).  The notice—signed by Gary Alexander—is fairly incomprehensible and makes no reference to TILA.  Instead, the notice purports to "revoke, rescind and terminate all my signatures relating to any/all said deeds, notes, and agreement's from their inception…and hereby revoke, terminate and rescind all Powers of Attorney…previously assigned by me…as such pertains to any property, real or personal, Promissory Note/Loan/Deed of Trust…." <u>Id</u>. at 5.  Plaintiff claims that the Notice is a proper notice of rescission under section 1635 of the Truth in Lending Act.  (Dkt. #1), ¶¶ 21-22; 15 U.S.C. § 1635.

MERS now moves to dismiss Plaintiff's claims for lack of proper service and failure to allege sufficient facts to support a claim against MERS. Capital One moves for summary judgment, arguing that Plaintiff's claims are barred by the doctrine of claim preclusion; that the TILA rescission was invalid; that Plaintiff's FDCA claim fails because Capital One is not a "debt collector" under the terms of the Act and a nonjudicial foreclosure proceeding is not a collection of a debt; that Plaintiff's wrongful foreclosure claim is barred by the statute of limitations; that Plaintiff's CPA claim is not supported by evidence of an unfair or deceptive act or practice by Capital One; and that there is no justiciable controversy to sustain Plaintiff's Declaratory Judgment claim. In turn, Plaintiff argues that claim preclusion does not apply since this is the first action by Integrity Trust against these defendants; that the case is not ripe for dispositive motion practice; that material facts are in dispute; and that Defendants are time-barred from challenging the alleged TILA rescission. Because the Court finds that Plaintiff has not served MERS and is barred from bringing its present claims by the doctrine of claim preclusion, the Court does not address the parties' other arguments.

## DISCUSSION

### A.     MERS's Motion to Dismiss

Defendant MERS moves to dismiss for lack of service and failure to state a claim against MERS. (Dkt. #15), at 2. If Plaintiff has not effectuated proper service as required under Federal Rule of Civil Procedure 4, the Court has no jurisdiction and may not consider the parties' remaining arguments. See Carter v. Champion Int'l, 911 F.2d 737 (9th Cir. 1990) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure or there is no personal jurisdiction."). The Court therefore addresses the service of process argument first.

"Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004). Rule 4 requires the

defendant to be served within 90 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In the Ninth Circuit, Rule 4 may be liberally construed so that failure to comply does not require dismissal of the complaint if: "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for the failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." Borzeka v. Heckler, 739 F.2d 444, 447 (9th Cir. 1984). But the sufficient notice exception should not be taken as an invitation to ignore Rule 4. Jenkins v. Washington, C11-1376JCC, 2012 WL 3278924, at *1 (W.D. Wash. Aug. 10, 2012).

Here, Plaintiff meets parts (a) and (b) of the test. The lawsuit was filed on June 17, 2016, and MERS' attorney was aware of the lawsuit and the contents of the Complaint by no later than June 28, 2016. See (Dkt. #15), Federal Court Declaration of John Knox ("Fed. Ct. Knox Decl."), Ex. M, at 2. Further, MERS has not alleged any prejudice.

But Plaintiff is unable to meet parts (c) and (d) of the test above: Plaintiff has provided no justifiable excuse for the failure to serve MERS nor has Plaintiff made any argument that it would be prejudiced if its complaint is dismissed. See (Dkt. #19). Plaintiff's failure to serve MERS is all the more egregious because MERS' counsel asked Plaintiff to provide proper service more than six months ago, in June 2016. (Dkt. #15), Knox Fed. Ct. Decl., Ex. M., at 2; See also id. at 1 (Plaintiff's counsel responded, "I have not perfected service of process, but we intend to get that done ASAP").  Having concluded that Plaintiff has not demonstrated proper service nor provided an excuse for improper service, the Court dismisses the action against MERS without prejudice in accordance with Federal Rule of Civil Procedure 4(m).

ORDER GRANTING MERS'S MOTION
TO DISMISS AND CAPITAL ONE'S MOTION
FOR SUMMARY JUDGMENT                  -5-

## B. Capital One's Motion for Summary Judgment

Capital One argues that Plaintiff's claims are precluded by the prior summary judgment rendered by the Washington superior court in Alexander II. In order to prevail on summary judgment in this case, Capital One has the burden to establish that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If Capital One satisfies its burden, Plaintiff must designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 US. at 324.

Federal courts are required to "give the same preclusive effect to state court judgments…as the rendering state court would." Furnace v. Giurbino, 838 F.3d 1019, 1023 (9th Cir. 2016). "Under Washington law, claim preclusion 'prohibits the relitigation of claims and issues that were litigated, or could have been litigated, in a prior action.'"Alonso v. CenturyLink Commc'ns, C15-5122 BHS, 2015 WL 4484335, at *2 (W.D. Wash. July 22, 2015) (quoting Karlberg v. Otten, 167 Wn.App. 522, 535 (2012)). "The general rule is that 'if an action is brought for part of a claim, a judgment obtained in the action precludes the plaintiff from bringing a second action for the residue of the claim.'" Id. (quoting Landry v. Luscher, 95 Wn.App. 779, 782 (1999)). "Claim preclusion, however, does not bar a party from bringing a claim that could not have been litigated in the prior action." Id.

"The threshold requirement of [claim preclusion] is a final judgment on the merits in the prior suit." Alonso, 2015 WL 4484335, at *2 (quoting Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 865 (2004)). "In addition to a final judgment on the merits, the subsequent action must be identical with the prior action in four respects: '(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.'" Id. (quoting Rains v. State, 100 Wn.2d 660, 663 (1983)). "The party asserting claim preclusion bears the burden of proof." Id.

ORDER GRANTING MERS'S MOTION
TO DISMISS AND CAPITAL ONE'S MOTION
FOR SUMMARY JUDGMENT          -6-

Here, the threshold requirement is met; there is a final judgment on the merits. The Alexander II court granted summary judgment in favor of defendants and dismissed all of the Alexanders' claims. "A grant of summary judgment is a final judgment on the merits with the same preclusive effect as a full trial." Alonso, 2015 WL 4484335, at *2 (quoting In re Estate of Black, 153 Wn.2d 152, 170 (2004)). Moreover, the summary judgment ruling was affirmed on appeal. Alexander v. Capital One, Nos. 71952-1-I, 72350-2-I, 2015 WL 7736383 (Ct. App. Nov. 30, 2015). Having found the threshold requirement satisfied, the Court addresses the remaining four preclusive elements.

1. *Subject matter*

The Court finds that the subject matter between the two actions is identical. The present action, like the state court actions, concerns the 2012 foreclosure of the Property. The general allegations in Alexander II and the present complaint are essentially identical, and both involve the accusation that the foreclosure was invalid because "[n]one of the named defendants had proper standing to participate in a nonjudicial foreclosure action of the trust's real property." (Dkt. #1), at 7; (Dkt. #15), Knox Fed. Ct. Decl., Ex. E (Alexander II complaint), ¶ 26. The facts alleged in the complaints and the theories of the case argued are also identical.

2. *Causes of action*

To determine whether the causes of action are identical, the Court considers four criteria: (1) whether rights or interests established in the prior judgment would be destroyed or be impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. Rains v. State, 100 Wn.2d 660, 664 (1983). "It is not necessary that all four factors favor preclusion to bar the

claim." Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 867 (9th Cir. 1995). "The most important factor is whether the two suits arise from the same transactional nucleus of facts." Alonso, 2015 WL 4484335, at *3. "Two claims may be identical for claim preclusion purposes even where the second case contains additional facts or legal theories not asserted in the first." Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235, 1241 (W.D. Wash. 2006).

The first factor is easily satisfied. The Alexander II court determined that Capital One owned the Note and the Alexanders' arguments to the contrary were "not grounded in fact and not warranted by law." Alexander II, No. 13-2-27723-9, slip op. at 6. To find in favor of Plaintiff in this case would destroy Capital One's previously adjudicated rights in the Property. The third and fourth elements are also satisfied, as both Alexander II and the present suit involve the alleged infringement of rights to the Property and arise out of the same events surrounding the 2012 foreclosure.

Finally, even taking into account the three new causes of action—to effectuate rescission pursuant to TILA, and for violations of the Fair Debt Collection Act and Consumer Protection Act—the second element is satisfied. "The 'substantially the same evidence' factor requires analysis of whether the evidence necessary to support each action is identical." Ensley v. Pitcher, 152 Wn.App. 891, 903 (2009). Despite bringing new claims, Plaintiff has alleged no new facts or legal theories for the purposes of claim-preclusion. The "new" facts do not post-date the previous lawsuits and the related legal theories could have been litigated in Alexander II. The new causes of action are supported by reference to the alleged 2012 TILA rescission and Plaintiff's allegation that the 2012 Trustee's Sale was an "unlawfully executed…nonjudicial foreclosure of the trust real property." (Dkt. #1), ¶ 24, (Causes of Action I, II, and V). Because these allegations are based on conduct that predates Alexander II, claim preclusion bars Plaintiff from bringing these claims now. Alonso, 2015 WL 4484335, at *4.

3. *Persons and parties*

The Court finds the parties in both cases are identical: MERS and Capital One were defendants in the prior suits and for claim preclusion purposes, Integrity Trust and the Alexanders are also the same. Plaintiff argues that this is "the first lawsuit asserted by Integrity Trust against these defendants." (Dkt. #19), at 3. But "'[i]dentity of parties is not a mere matter of form, but of substance. . . . Parties nominally different may be, in legal effect, the same.'" Rains, 100 Wn.2d at 664 (quoting Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402 (1940)). "Different defendants in separate suits are the same party for [claim preclusion] purposes as long as they are in privity." Ensley, 152 Wn.App. at 902. "Privity exists where substantial identity between parties supports a sufficient 'commonality of interest.'" Miller v. Wright, C11-5395RBL, 2011 WL 4712245, at *5 (W.D. Wash. Oct. 6, 2011) (quoting Tahoe–Sierra Preservation Council v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1081 (9th Cir. 2003)). "Where interests of new parties to the suit were amply represented in prior actions, privity exists." Id.

The Defendants correctly identify several factors that demonstrate Integrity Trust is in privity with the Alexanders: the Trust acquired the Property from the Alexanders; Integrity Trust and the Alexanders are claiming under the same title; and the Trust was adequately represented in the prior suits by the Alexanders, who sought title to the Property and challenged Capital One's ownership in the Note and its right to foreclose on the Property. Plaintiff does not dispute these arguments.

It is apparent that the Alexanders treat Integrity Trust as an alter-ego; they brought both state court lawsuits regarding their rights to the Property *after* they conveyed the Property to Integrity Trust in February 11, 2011. Further, Integrity Trust is represented by the Alexanders' attorney and has pasted the general allegations from Alexander II word-for-word into the current Complaint. The Court therefore finds "substantial identity" between the Alexanders and Integrity

ORDER GRANTING MERS'S MOTION
TO DISMISS AND CAPITAL ONE'S MOTION
FOR SUMMARY JUDGMENT         -9-

Trust that "supports a sufficient commonality of interest." Miller, 2011 WL 4712245, at *5 (quoting Tahoe–Sierra, 322 F.3d at 1081).

4. *Quality of Persons For or Against Whom the Claim is Made*

The final prong of the claim-preclusion analysis "simply requires a determination of which parties in the second suit are bound by the judgment in the first suit." Ensley, 152 Wn. App. at 905. Those who are bound by the first suit include "all parties to the litigation plus all persons in privity with such parties.'" Id. The Alexander II court determined that Capital One owned the Note, which was secured by a DOT on the Property authorizing the trustee to sell the Property if the Alexanders defaulted on their obligations under the Note. Alexander II, No. 13-2-27723-9, slip op., ¶¶ 2-4. The court also determined that the Alexanders had defaulted on the Note. Id., ¶ 16. That determination applies equally to the Alexanders and the current Plaintiff, Integrity Trust.

The Court finds that Capital One has demonstrated that Plaintiff's claims against it are precluded by the final judgment in Alexander II. Plaintiff has failed to raise any facts that defeat a finding of claim preclusion.

## CONCLUSION

For the reasons explained above, the Court finds that it has no jurisdiction over Defendant MERS, and all claims against Defendant Capital One are barred by the doctrine of claim preclusion. Therefore, Defendant MERS' motion to dismiss (Dkt. # 15) is GRANTED without prejudice, and defendant Capital One's motion for summary judgment (Dkt. # 15) is also GRANTED.

DATED this 20th day of January, 2017.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge