The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Integrity Trust, by its trustee, Jon Cuddeback,<br><br>          Plaintiff,<br><br>      v.<br><br>Capital One, N.A.; Chevy Chase Bank, F.S.B. a defunct bank; Mortgage Electronic Registration Systems, Inc., aka MERS; Chicago Title Co.; John Does Nos. 1-50,<br><br>          Defendants. | NO. C16-927 RSL<br><br>CAPITAL ONE AND MERS' MOTION FOR RULE 11 SANCTIONS AND ATTORNEYS' FEES UNDER CONTRACT AND RCW 4.84.185<br><br>NOTE ON MOTION CALENDAR: February 17, 2017 |

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

## I. INTRODUCTION

The residence located at 2222 West Lake Sammamish Parkway NE, Redmond, Washington (the "Property") was constructed with the proceeds of a $3 million loan Chevy Chase Bank, F.S.B. made to Gary and Diane Alexander in 2007. Chevy Chase merged into Capital One, N.A. in early 2009. The Alexanders defaulted on the loan in October 2009. Capital One acquired title to the Property through a trustee's sale and deed in late 2012. Since then, the Alexanders have steadfastly resisted Capital One's efforts to gain possession of the Property. The Alexanders' efforts include filing frivolous litigation with junk science "experts", bankruptcy filings and recording fraudulent documents on the title of the Property. This isn't just Capital One's opinion. Rule 11 sanctions of nearly $80,000 have already been awarded against the Alexanders and their attorney, J.J. Sandlin, and affirmed on appeal.

This is the third lawsuit challenging foreclosure of the Property. The Alexanders filed two wrongful foreclosure lawsuits, the first *pro se* in November 2012 (Alexander I) and the second through Mr. Sandlin in July 2013 (Alexander II). Both lawsuits were premised on the Alexanders' ownership of the Property. The propriety of the Property's foreclosure was thoroughly litigated and the summary judgment dismissing all of the Alexanders' claims was affirmed on appeal. Now, after taking no action for four years, the Alexanders' revocable living trust, "Integrity" Trust, comes forward claiming ownership of the Property since February 2011 based on a Warranty Deed from the Alexanders.

Mr. Sandlin attempts to explain away this most fundamental factual inconsistency as follows:

> Apparently we all missed the fact that Integrity Trust was legal owner of the contested property, long before the nonjudicial foreclosure was executed against the contested property. The fact that the trust was never served and was never a legitimate part of the nonjudicial foreclosure action places those involved in the attempted collection against the trust property in a very serious violation of the FDCPA, as pleaded in the complaint. I did not have knowledge of the trust's position, or the trustee's position, and apparently neither did [Capital One].[1]

---

[1] *See* Declaration of John A. Knox in Support of Motion to Dismiss as to MERS and Motion for Summary Judgment as to Capital One (Dkt. 16), Ex. M, Dkt. 16-13, pp. 152-3.

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES - 1
(C16-927 RSL)
5843133.2

Williams, Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

Mr. Sandlin's explanation—and his claimed ignorance of the deed—are demonstrably false:

- On June 25, 2013, Mr. Sandlin appeared with the Alexanders at the Section 341 Creditors Meeting in their bankruptcy and offered an explanation for the deed to Integrity Trust.  (Supp. Knox Decl., Dkt. 21-1, pp. 9, 11-14.)

- On December 16, 2013, Capital One's counsel provided the deed to Mr. Sandlin together with a table showing questionable documents recorded on the Property's title (Dkt. 16-6, pp. 93-106).

- On December 30, 2013, Capital One filed its Answer in Alexander II stating that "Plaintiffs lack standing … [because] plaintiffs deeded the property to Integrity Trust by Warranty Deed dated February 11, 2011" (Dkt. 21-1, p. 24).

- On February 7, 2014, the deed was marked as an exhibit at the deposition of plaintiffs' expert in Alexander II.  Mr. Sandlin questioned plaintiffs' expert about title documents referencing Integrity Trust.  Mr. Sandlin even moved to strike certain of the documents referencing Integrity Trust as fraudulent.  Knox Fed. Ct. Sanctions Decl., Ex. 1 (Gileno Transcript), pp. 46-47, 135, 143-145, and 153-154.

- On February 26, 2014, Capital One moved for summary judgment in Alexander II noting that the Alexanders had signed a Warranty Deed conveying the Property "free and clear of all encumbrances" to a self-settled trust, Integrity Trust, for the benefit of their sons and that Capital One believed the deed was part of a fraudulent conveyance and transaction and Integrity Trust didn't own the Property.  Knox Fed. Ct. Sanctions Decl., Ex. 2, p. 14.

- The Alexander II court awarded CR 11 sanctions against the Alexanders and Mr. Sandlin, finding that the Alexanders "signed a Warranty Deed and participated in the recording of numerous fraudulent documents on the title of the Property in an effort to cloud title and cause delay in the eviction." (Dkt. 16-9, pp. 120-121.)

If Mr. Sandlin forgot the deed to Integrity Trust was raised many times in Alexander II, even a cursory review of his own case file certainly would have refreshed his recollection.  Any suggestion the parties "missed the fact that Integrity Trust" allegedly owned the Property or that Mr. Sandlin did not know of the deed to Integrity Trust is fanciful, at best.

Equally concerning is Mr. Sandlin's suggestion that Integrity Trust was not provided notice of the foreclosure proceeding.  To the contrary, the Notice of Default to the Alexanders was mailed to Integrity Trust at two different addresses.  Dkt. 15-2, Ex. 9, p. 95.  Furthermore, the Notice of Trustee's Sale was mailed to Integrity Trust at two addresses—the address listed in the

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES - 2
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

Warranty Deed and at the Property—and to Gary Alexander c/o Integrity Trust at the first of these addresses. Dkt. 15-2, Ex. 10, p. 103. These Notices were exhibits to Capital One's summary judgment motion in Alexander II, were provided to Mr. Sandlin at that time and would have been easily discovered as part of a diligent pre-filing investigation. In addition to mailed notice, Integrity Trust received Notice of the Trustee's Sale through posting of the Property, publication of the Notice and recording of the Notice.[2]

Perhaps most damning to the suggestion that Integrity Trust's lawsuit is independent of and unrelated to the Alexanders' prior lawsuits was Mr. Sandlin's own characterization of Integrity Trust's trustee Jon Cuddeback. Mr. Cuddeback is "Charlie McCarthy," according to Mr. Sandlin, and Mr. Alexander is the "puppeteer." Dkt. 21, ¶ 5.

The factual contentions underlying Integrity Trust's lawsuit lack evidentiary support and/or are contrary to the factual record in the Alexanders' prior lawsuits. Moreover, as discussed below and in Capital One's summary judgment motion (Dkt. 15) and reply (Dkt. 20), Integrity Trust's claims are not warranted by existing law. Capital One's counsel advised Mr. Sandlin in his first communication that the factual contentions lack evidentiary support and the law did not support Integrity Trust's claims. Dkt. 16-13, pp. 151-2. In response, Mr. Sandlin dismissed any suggestion of a Rule 11 violation and, instead, claimed that Capital One's counsel was jointly and severally liable for violating the FDCPA and suggested counsel would be named as a John Doe defendant if he continued to represent Capital One. *Id.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

Capital One incorporates the Factual and Procedural Background from its summary judgment motion (Dkt. 15, pp. 2-9). For purposes of the instant motion, it is important that the key facts were established in Alexander II or were the subject of documents produced in that case. This information was readily available to Mr. Sandlin for his pre-filing investigation. It is also important to note that the Alexanders (and Integrity Trust if it owns the Property) have benefitted

---

[2] *Id.* at p. 97 (showing recording); Dkt. 16-12, Ex. L, p. 149 (Declaration of Posting) and Ex. N, p. 154 (Affidavit of Publication).

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND
ATTORNEYS' FEES - 3
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

by far more than a million dollars by occupying the Property for nearly seven years since defaulting on the Note without making a single mortgage payment.  Dkt. 16-9, p. 121 (benefit from delay exceeding $900,000 as of June 2014).  This lawsuit was filed to further delay Capital One acquiring possession of the Property (*see* Dkt. 5, Motion for TRO) and that delay substantially benefits Integrity Trust (and the Alexanders).

III.  <u>ARGUMENT</u>

Plaintiff's Complaint alleges four substantive claims, each of which hinges on the validity of the Alexanders' attempted November 2012 rescission of the Note and DOT under TILA.  Capital One advised Mr. Sandlin on July 8, 2016 that no right of rescissions exists for residential mortgage transactions and that any right of rescission is limited to three years, which expired more than two years before the Alexanders' attempted rescission.  Knox Fed. Ct. Sanctions Decl., Ex. 3.  Capital One also reminded Mr. Sandlin that Integrity Trust received the required statutory notice of the trustee's sale.  *Id.*  Because Integrity Trust did not dismiss its factually and legally baseless lawsuit, Capital One filed a detailed summary judgment motion.  That motion challenged each of Integrity Trust's claims on both factual and legal grounds.  Integrity Trust's short opposition addressed only one of its claims—the TILA rescission claim—but wholly failed to discuss the absence of a right of rescission.  The Court should sanction Integrity Trust and Mr. Sandlin under Rule 11 and award attorneys' fees against Integrity Trust under the DOT and the frivolous action statute, RCW 4.84.185.

A.      <u>Standard for Awarding Rule 11 Sanctions Based on Filing of a Frivolous Complaint.</u>

"Rule 11 requires that an attorney sign a pleading, motion, or other paper, only if, 'to the best of [his] knowledge, information and belief formed after reasonable inquiry[,] it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. . . .'"  *Walls v. Pastor*, 2012 U.S. Dist. LEXIS 98543, *5-6 (W.D. Wash. June 20, 2012) (*quoting* Fed. R. Civ. P. 11).  "When, as here, a complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective,

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND
ATTORNEYS' FEES - 4
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (internal quotations and citation omitted). "As shorthand for this test, we use the word 'frivolous' to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Id.*

To have an adequate legal basis for the allegations in the complaint, "the pleader, at a minimum, must have a 'good faith argument' for his or her view of what the law is, or should be." *Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986). "A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after 'reasonable inquiry.'" *Id.*; *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ("The attorney has a duty prior to filing a complaint not only to conduct a reasonable factual investigation, but also to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are warranted by existing law or a good faith argument for an extension, modification or reversal of existing law.") (internal quotations and citation omitted); *Holmberg v. Vail*, 2012 U.S. Dist. LEXIS 14105, *13 (W.D. Wash. Jan. 3, 2012) ("a pleading or motion is not 'warranted by law' where no 'plausible, good faith argument can be made by a competent attorney' in support of the proposition asserted.") "Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case." *Id.* The certification requirement of Fed. R. Civ. P. 11 also requires the person presenting a factual contention to conduct a prefiling examination of the facts that is reasonable under the circumstances. *Id.* Finally, "[t]he reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d at 677.

Here, Mr. Sandlin and Integrity Trust should be sanctioned for filing a third lawsuit against Capitol One because even minimal legal research would have indicated the TILA and FDCPA claims were fatally defective. Modest analysis of claim preclusion, a topic taught to first year law students, would have lead a competent and diligent attorney to conclude that most or all

of the claims were barred by Alexander II. Similarly, a reasonable factual investigation would have revealed that plaintiff's claims were factually baseless.

B.        Plaintiff's TILA Rescission Claim was Legally and Factually Baseless.

The Alexanders theory is that they can (1) obtain a $3M loan to construct their home secured by a DOT on the Property, (2) stop making loan payments within three years, (3) deed the Property about a year later "free of any encumbrance" to a revocable trust benefiting their children, (4) "extinguish" the note for the loan and the DOT twenty months later by signing a Notice of Right to Cancel under TILA[3] and, magically, (5) "under TILA" their trust—plaintiff Integrity Trust—somehow owns the Property free and clear of the DOT given to secure the loan. No competent attorney would believe this theory after reasonable inquiry, particularly following the Alexander II litigation.

The legal linchpin of plaintiff's case is 15 U.S.C. § 1635, entitled "Right of rescission as to certain transactions," and particularly subsection (b) which relates to the consequences of an "obligor exercis[ing] his right to rescind under subsection (a)" of the statute. Subsection (a) provides a right to rescind a transaction under certain circumstances "except as otherwise provided in this section…." 15 U.S.C. § 1635(a).

An adequate pre-filing inquiry into the law supporting a rescission claim under § 1635(a) would require, at bare minimum, reading all of § 1635 and the statutes it references. Had Mr. Sandlin done so, he would have discovered that "residential mortgage transactions" are exempted from § 1635 and the right of rescission expires three years after consummation of the transaction. 15 U.S.C. § 1635(e) and (f). Documents filed in Alexander II reflect that the $3M loan was used to construct the Alexanders' home, so the loan transaction was a "residential mortgage transaction" exempted from TILA's right of rescission.[4] Moreover, the loan transaction closed by

---

[3] The Complaint refers to a Notice of Revocation of Power of Attorney as the document by which the Alexanders attempted to rescind the loan. However, Capital One's counsel located, and provided with its summary judgment reply, a Notice of Right to Cancel under TILA that appears more on point that the document relied on in the Complaint. *See* Dkt. 21, ¶ 4 and Ex. Q.

[4] *See* 15 U.S.C. § 1602(x); Dkt. 15-1, pp. 56-60 (Construction/Permanent Loan Rider to DOT); Dkt. 15-3, pp. 134-127 (Construction/Permanent Loan Addendum to Note).

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND
ATTORNEYS' FEES - 6
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

early April 2007 so any right of rescission expired in early April 2010, years before the Alexanders' Notice of Right to Cancel. Even a cursory pre-filing investigation would have revealed that the Alexanders never had a right to rescind under TILA and that they were years late when they attempted to rescind. Plaintiff's TILA rescission claim was not "warranted by existing law." *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986) ("The pleader, at a minimum, must have a 'good faith argument' for his or her view of what the law is, or should be. A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after 'reasonable inquiry.'").

Integrity Trust's summary judgment opposition does not even acknowledge that residential mortgage transactions are exempt under TILA or that there is a three year statute of repose on TILA's right of rescission. Nor did Integrity Trust offer a good faith alternative interpretation of § 1635(e) and (f). Because each of plaintiff's claims depends on the Note and DOT having been rescinded or extinguished, which did not and could not have occurred, each of plaintiff's claims is legally baseless.

Besides these fatal legal defects, the TILA rescission claim is factually baseless. First, the Alexanders received a complete TILA disclosure on March 30, 2007 and Mr. Sandlin received the disclosure by March 2014. *See* Dkt. 16, ¶ 2, Ex. A; Knox Fed. Ct. Sanctions Decl., ¶ 11. The Complaint does not allege any deficiency in the TILA disclosure, so any right of rescission was limited to three days at most. Second, there is no factual (or legal) basis for Integrity Trust asserting a rescission claim on behalf of the Alexanders.

The TILA rescission claim—the heart of plaintiff's case—was legally and factually baseless.

C.   <u>Plaintiff's Fair Debt Collection Practices Act Claim was Legally and Factually Baseless.</u>

Plaintiff's FDCPA claim was legally baseless because Capital One is not a "debt collector" and nonjudicial foreclosure is not "debt collection" within the meaning of the Act. *See* Dkt. 15, pp. 16-18; 15 U.S.C. § 1692a(6)(F) (exclusions from definition of "debt collector"). A reasonable pre-filing investigation of a potential FDCPA claim would have entailed legal research

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES - 7
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

to determine whether Capital One was a "debt collector" within the meaning of the Act, including reading the definition of "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6). Had Mr. Sandlin read the definition, particularly the exclusions, then based upon evidence in the Alexander II case, Mr. Sandlin would have known that Capital One was not a debt collector because it originated the debt (through its predecessor) and/or the debt was not in default when Capital One acquired it by merger. Adequate legal research would also have disclosed that a nonjudicial foreclosure is not "debt collection" within the meaning of the FDCPA. Both of these issues commonly arise with FDCPA claims in mortgage foreclosure litigation and should have been investigated by Integrity Trust and its counsel.

In addition, the FDCPA claim was factually deficient because the only "unfair practice" alleged under 15 U.S.C. § 1692f was attempting to obtain collateral where there was "no present right of possession … through an enforceable security interest" or the "property was exempt by law" because the underlying Note and DOT had been rescinded and extinguished. Complaint, Dkt. 1, ¶¶ 23-24. However, as discussed above, a reasonable investigation would have disclosed that the Note and DOT could not have been rescinded or extinguished under TILA.

Thus, Integrity Trust's FDCPA claim was legally and factually baseless. Plaintiff's summary judgment Opposition does not even mention the FDCPA claim. This is an implicit admission that the claim was baseless from the outset.

D.    Claim Preclusion is a Huge Hurdle for Plaintiff But the Complaint Does Not Even Acknowledge the Prior Lawsuit or its Impact and Plaintiff's Summary Judgment Opposition Fails to Argue Against or Even Mention Claim Preclusion.

The Complaint in this lawsuit is based on the Alexander II Complaint. In fact, the Alexander II case number is mistakenly included on Integrity Trust's Complaint. And, the CPA and wrongful foreclosure allegations are mostly copied verbatim from the Alexander II Complaint. Dkt. 15, pp. 19-20. Despite Mr. Sandlin representing the plaintiffs in Alexander II, the Integrity Trust Complaint bears no evidence that any consideration was given to the issue of claim preclusion. More significantly, even though claim preclusion is argued at length in the

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND
ATTORNEYS' FEES - 8
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

summary judgment motion, plaintiff's Opposition does not mention claim preclusion, much less argue that claim preclusion does not apply.

A reasonable pre-filing inquiry would have analyzed the impact of claim preclusion on Integrity Trust's claims. That is particularly true since Integrity Trust's claims and those of the Alexanders arose out of the "same transactional nucleus of facts." Dkt. 15, pp. 14-15. In fact, the central issue of TILA rescission by the Alexanders was a claim Integrity Trust could make–if at all–only in a derivative capacity.

Plaintiff's summary judgment Opposition does not mention claim preclusion or argue that it does not apply to Integrity Trust's claims. The closest plaintiff comes is arguing that the Alexander II litigation was a "nullity" because Capital One allegedly had no standing to bring claims because the Note and DOT allegedly were "irretrievably rendered void upon mailing of the rescission." Opp. at 5. This claim fails as a matter of law, as discussed above. Moreover, plaintiff fails to argue why the Alexanders' claimed rescission—an argument never made in Alexander II—is not barred by claim preclusion.

The fact that Mr. Alexander is actively involved in Integrity Trust's lawsuit reinforces that the Alexanders and Integrity Trust are in privity and any issues of TILA rescission and Integrity Trust's claimed ownership of the Property should have been litigated in Alexander II. Integrity Trust's claims are baseless because they are all barred by claim preclusion, which would have been disclosed by a reasonable pre-filing investigation. *See Buster v. Greisen*, 104 F.3d 1186 (9th Cir. 1997) (affirming award of Rule 11 sanctions where district court found suit barred by res judicata and collateral estoppel).

E.    Plaintiff's Wrongful Foreclosure Claim was Baseless.

Plaintiff's wrongful foreclosure claim was based on the discredited argument that the Note and DOT were rescinded before the foreclosure. Besides being contrary to TILA (as discussed above) plaintiff's wrongful foreclosure claim was barred by claim preclusion. If the Alexanders believed they rescinded the Note and DOT under TILA, that claim should have been made in Alexander II but it wasn't. The court of appeals affirmed the dismissal of the Alexanders'

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND
ATTORNEYS' FEES - 9
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

wrongful foreclosure claim. Claim preclusion bars the Alexanders or Integrity Trust, which is in privity with the Alexanders, from arguing that the Note and DOT were rescinded under TILA.

A reasonable pre-filing inquiry would have addressed the statute of limitation applicable to plaintiff's wrongful foreclosure claim. This is particularly true because the foreclosure occurred in November 2012—more than three and a half years ago—and the Deeds of Trust Act and the catch all statute of limitation both prescribe a two year limitation period. Dkt. 15, pp. 20-21. Plaintiff offered no alternative statute of limitation. Nor did plaintiff argue that its wrongful foreclosure claim was timely.

Plaintiff's failure to argue claim preclusion and the statute of limitations in its summary judgment Opposition is an implicit admission that its wrongful foreclosure claim was barred by claim preclusion and the statute of limitation. The wrongful foreclosure claim was baseless.

F.      Plaintiff's CPA Claim was Baseless.

Plaintiff's CPA claim does not allege any unfair or deceptive act or practice and seems based on the defendants allegedly "wrongfully dispossess[ing] the plaintiff trust … of legal title and possession of its real property." Complaint, ¶ 46. The CPA claim simply repackages plaintiff's TILA rescission and wrongful foreclosure claim. Both those claims were baseless, for the reasons discussed above, and so was the CPA claim. Capital One's summary judgment motion challenged plaintiff to come forward with evidence establishing a *prima facie* CPA claim. Plaintiff offered no such evidence. In fact, plaintiff's Opposition does not even mention the CPA claim, an implicit admission that the claim was baseless. Finally, dismissal of the CPA claim in Alexander II was affirmed on appeal and plaintiff offers no explanation why its CPA claim is not barred by claim preclusion.

G.      The DOT Requires an Award of Attorneys' Fees Where a Party has Been Forced to Incur Fees to Enforce or Construe the Contract.

Paragraph 26 of the DOT provides that "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." (Dkt. 15-1, p. 47.) Integrity Trust's lawsuit was premised on the DOT

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND
ATTORNEYS' FEES - 10
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

having been extinguished, rescinded or voided.  Capital One and MERS were forced to incur attorneys' fees and costs in order to uphold the validity of the DOT, the power of sale contained in the DOT and the Trustee's Deed that resulted from the Trustee's exercise of that power of sale. Because Capital One and MERS were the prevailing parties, they are entitled to reimbursement of their attorneys' fees and costs under the DOT.

"[W]here a contract provides for an award of reasonable attorney's fees to the prevailing party, such an award must be made." *Singleton v. Frost*, 108 Wn.2d 723, 727, 742 P.2d 1224 (1987).  The language in the DOT was unilateral; therefore, RCW 4.84.330 applies and provides that "the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements." RCW 4.84.330.  "Under RCW 4.84.330, 'prevailing party' means the party in whose favor the court rendered final judgment." *Hawkins v. Diel*, 166 Wn. App. 1, 10, 269 P.3d 1049 (2011).

Capital One and MERS are the prevailing parties and, under the terms of the contract, are entitled to attorneys' fees and costs associated with enforcing the validity and terms of the DOT. Defendants' attorneys' fees and costs are approximately $39,000.  This amount is modest compared with the more than $1 Million in mortgage payments or market value rent that the Alexanders and Integrity Trust have avoided paying since the Note went into default.

H.    The Court Should Award Defendants Their Reasonable Expenses Incurred in Opposing Plaintiff's Frivolous Action as Permitted Under RCW 4.84.185.

"RCW 4.84.185 authorizes a trial court to award a prevailing party 'reasonable expenses, including fees of attorneys, incurred in opposing' a frivolous action." *Stiles v. Kearney*, 168 Wn. App. 250, 260, 277 P.3d 9 (2012) (quoting RCW 4.84.185).  "An action is frivolous if it 'cannot be supported by any rational argument on the law or facts.'" *Eller v. E. Sprague Motors & R.V.'s, Inc.*, 159 Wn. App. 180, 191, 244 P.3d 447 (2010) (quoting *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 132, 783 P.2d 82 (1989)).  This statute "was enacted to discourage abuse of the legal system by providing for an award of expenses and legal fees to any party forced to defend itself against meritless claims asserted for harassment, delay, nuisance or spite." *Suarez v.*

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND
ATTORNEYS' FEES - 11
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

*Newquist*, 70 Wn. App. 827, 855 P.2d 1200 (1993). "As with CR 11, a trial court is not required to find an improper purpose under RCW 4.84.185 before awarding fees. . . . It is enough that the action is not supported by any rational argument and is advanced without reasonable cause." *Eller*, 159 Wn. App. at 192.

Here, plaintiff's lawsuit was clearly frivolous. All of plaintiff's claims against Capital One and MERS were based on the allegation that the Note and DOT had been extinguished or rescinded under TILA. That argument fails based on the plain language of 15 U.S.C. § 1635, a statute plaintiff quotes at length in the Complaint. Plaintiff's claims also fail based on claim preclusion and the other grounds argued in Capital One's motion for summary judgment. In an apparent rush to file a lawsuit and enjoin Capital One's writ of restitution hearing, plaintiff filed a lawsuit that was factually and legally devoid of any merit.

Plaintiff's claims against Capital One and MERS could "not be supported by any rational argument on the law or facts." *Eller*, 159 Wn. App. at 191. Plaintiff's action against Capital one and MERS was frivolous and defendants are entitled to "reasonable expenses, including fees of attorneys, incurred in opposing" plaintiff's action. RCW 4.84.185.

IV.  CONCLUSION

The Court should grant Capital One and MERS' motion and award Rule 11 sanctions against Integrity Trust and its counsel in the full amount of attorneys' fees incurred in defending this action. The Court should also award attorneys' fees in the same amount against Integrity Trust under the terms of the DOT and the frivolous action statute.

DATED this 30th day of January, 2017.

s/ John A. Knox
John A. Knox, WSBA #12707
Attorneys for Defendants Capital One, N.A. and MERS
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone:  (206) 628-6600
Fax:  (206) 628-6611
jknox@williamskastner.com

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES - 12
(C16-927 RSL)
5843133.2

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January, 2017 I caused the foregoing to be e-filed with the Clerk of Court through CM/ECF which caused a true and correct copy to be served upon counsel of record as shown below:

*Attorneys for Plaintiff:*

J.J. Sandlin, WSBA #7392
Sandlin Law Firm
PO Box 228
Zillah, WA 98953
Tel:  509-829-3111
Fax:  888-875-7712
Sandlinlaw@lawyer.com

Signed at Seattle, Washington this 30th day of January, 2017.

s/ John A. Knox
John A. Knox, WSBA #12707
Attorneys for Defendants Capital One, N.A. and MERS
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone:  (206) 628-6600
Fax:  (206) 628-6611
jknox@williamskastner.com

CAPITAL ONE AND MERS' MOTION FOR SANCTIONS AND ATTORNEYS' FEES - 13
(C16-927 RSL)
5843133.2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600